IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIE J. BOLDER, )
 )
 Plaintiff, )
 )  1:14CV628
v. )
 )
OFFICER PATRICK T. MERRITT JR., )
 )
 Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Officer Patrick T. Merritt Jr.'s (hereinafter "Defendant") motion for summary judgment. (Docket Entry 37.) Plaintiff Willie J. Bolder (hereinafter "Plaintiff") has not responded to the motion. The matter is ripe for disposition. For the reasons stated herein, the Court recommends that Defendant's motion for summary judgment be granted.

## I. FACTUAL BACKGROUND

In his amended complaint, Plaintiff alleges that Defendant conducted an unreasonable seizure of his cellular phone ("phone") in violation of his Fourth and/or Fourteenth Amendment of the U.S. Constitution. (*See generally* Am. Complaint (hereinafter "Compl."), Docket Entry 32.) In Plaintiff's complaint, he alleges that on April 29, 2014, Defendant arrived at the Hallmark Inn Hotel in Statesville, North Carolina, where Plaintiff was temporarily residing, and asked if Plaintiff would speak with him. (Docket Entry 2 at 3.) Plaintiff agreed because "[he] knew [he] had done nothing wrong[.]" Plaintiff then

accompanied Defendant to his vehicle. There was another officer who accompanied Defendant who stated he "just came along for the ride[.]" (*Id.*)

Defendant stated Plaintiff "was not under arrest or anything and neither was [he] a suspect, [Defendant] just wanted to get a statement from [Plaintiff] about what all took place at a easter egg hunt[.]" (*Id.*) Defendant proceeded to ask where Plaintiff was that night and he "answered[.]" (*Id.*) Defendant then asked Plaintiff whether he would perform a gun residue test and a lie detector test. (*Id.*) Plaintiff agreed to taking the gun residue test, but declined to perform the lie detector test. (*Id.*) Defendant inquired as to why Plaintiff would not take a lie detector test. (*Id.*) Plaintiff responded that he "was already nervous because he came out of no where questioning me about a murder and that I already had enough of my own problems to deal with[.]" (*Id.*) Defendant told Plaintiff he would "need the numbers to confirm [his] story" and Plaintiff retrieved his phone from his room. (*Id.*)

Upon returning, Plaintiff provided the phone numbers and Defendant then called the numbers. (*Id.*) Defendant next told Plaintiff he would also need his phone as well, and Plaintiff stated "no why[.]" (*Id.*) Defendant responded because your "phone was used to contact the victim earlier that day telling victim to bring someone's car he was driving." (*Id.*) Plaintiff stated that "he couldn't have been serious" and explained how the murder had nothing to do with him. (*Id.*) Further, Plaintiff indicated that his phone contained not only personal information, including bank information and emails, but also his phone was the only way his family could contact him. (*Id.*) In addition, Plaintiff questioned Defendant as to whether any other individual was forced to give up his personal property, and Defendant answered yes. (*Id.*) Defendant told Plaintiff "[he] had no choice," so he had to give Defendant

2

his phone. (*Id.*) Plaintiff then asked for it back and Defendant refused. (*Id.*) Defendant told Plaintiff to tell him the number he needed, and he would get it for him. (*Id.*) Plaintiff then asked how he could be forced to give his phone to Defendant without a warrant, and he stated "it was connected to the case." (*Id.*) Plaintiff left the car after two hours because he was scared and tired. (*Id.*) Last, on May 9, 2014, Plaintiff was brought to Concord Police Department and his secondary phone was confiscated, which he alleges has nothing to do with the investigation.

Defendant's summary judgment materials include the affidavit of Defendant Merritt. (Merritt Aff., Docket Entry 38.) According to Defendant, on April 21, 2014, Mr. Howard reported that a subject had been shot at his residence, 764 Central Drive, NW Concord, North Carolina. (*Id.* ¶ 2.) Once arriving at the location, officers found that the victim was suffering from gunshot wounds to his torso. (*Id.* ¶ 3.) Upon the victim being transferred to CMC-Northeast Medical Center, he was announced deceased, as a result of the gunshot wounds. (*Id.*) Thus, Defendant, along with other officers, were assigned to investigate the circumstances surrounding the death of the victim. (*Id.*)

Through the investigation, officers became aware that on April 20, 2014, an Easter party was held at Mr. Howard's house, where an altercation between the victim and Plaintiff arose. (*Id.* ¶ 4.) Bystanders confirmed that Plaintiff had a gun in his car and that he told the victim "he would be back." (*Id.* ¶ 5.)

Further, on April 29, 2014, Plaintiff was found at a Hallmark Inn in Statesville, North Carolina. (*Id.* ¶ 8.) When Defendant along with other officers arrived at Plaintiff's door they introduced themselves as detectives. (*Id.*) Plaintiff's first words were "am I going to jail?"

3

(*Id.*) Defendant then responded that Plaintiff "was not under arrest and was free to leave at any time." (*Id.*) During the interview, Plaintiff stated he had been present at Mr. Howard's residence until 7:30 p.m., but that he was back at his own apartment by 8:42 p.m. (*Id.*) Plaintiff then stated he did not leave his residence for the remainder of the night. (*Id.*) Defendant observed Plaintiff "constantly look[ing] at his phone" and concluded he was nervous. (*Id.*) Plaintiff then stated "he always had [his phone] with him." (*Id.*) Defendant then "informed Plaintiff that [Defendant] needed his phone[,]" and Plaintiff "handed his phone" to Defendant. (*Id.* ¶ 9.) Plaintiff remained in Defendant's car for fifteen minutes and "never asked for his phone back." (*Id.*)

On April 30, 2014, "prior to accessing any information on" Plaintiff's phone, Defendant applied for and received a search warrant for Plaintiff's phone. (*Id.* ¶ 11; Exh. 2.) That same day, Plaintiff contacted Defendant to meet, and once arriving Plaintiff disclosed that Antwon Howard had a firearm on the night of the homicide. (*Id.* ¶ 12.) Further, Plaintiff told Defendant that Antwon Howard had stated he was going to "handle" the victim. (*Id.*) Plaintiff then came to the police department to provide an initial statement, and Defendant served the search warrant upon Plaintiff "to seize his phone." (*Id.* ¶ 13.) He also consented to a forensic examination of his cell phone by "signing a consent search form." (*Id.*) Through the forensic examination of Plaintiff's phone, Defendant found GPS coordinates indicating he was near the location of the shooting at the time it occurred, in contrast with Plaintiff's previous statements. (*Id.* ¶ 17.) Also a traffic camera, showed a sedan similar in appearance to Plaintiff's in the vicinity of the shooting. (*Id.* ¶ 20.) In addition, a message receipt was recovered on Plaintiff's phone indicating a purchase from a convenience store, located 7 miles

4

away from the incident at 2:00 a.m. (*Id.*) From a surveillance photograph at the convenience store, officers viewed Plaintiff wearing camouflage and fatigue pants, and a dark colored hooded sweatshirt and hat. (*Id.* ¶ 21.) Plaintiff's clothing was similar in appearance to the individual looking for the victim described by Damesha Maxwell and Mr. Howard. (*Id.* ¶ 19.) On May 8, 2014, Plaintiff was charged with first degree murder, and on November 18, 2015, he was convicted. (Merrittt Aff. ¶ 22, 23.)

## II. PROCEDURAL BACKGROUND

On July 25, 2014, Plaintiff filed a complaint against Defendant, pursuant to 42 U.S.C. § 1983. (*See generally* Complaint, Docket Entry 2.) On November 14, 2014, Defendant filed a motion to dismiss for failure to state a claim. (Docket Entry 10.) On May 15, 2015, the Court entered a memorandum opinion and recommendation that Defendant's motion to dismiss was granted in part, to the extent Defendant sought abstention of the matter pursuant to the *Younger* doctrine. (Docket Entry 15.) On June 11, 2015, the Court's memorandum opinion and recommendation was adopted and the matter was stayed pending the resolution of the state court's criminal proceedings. (Docket Entry 17.)

On February 29, 2016, Defendant filed his status report to the Court indicating that Plaintiff was found guilty of murder in the first degree on November 18, 2015, by jury verdict, and was now serving a life sentence at the North Carolina Central Prison. (Docket Entry 19.) On September 2, 2016, the Court entered a recommendation that Plaintiff's claim not be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and that further proceedings commence in this matter. (Docket Entry 23.) The Court's recommendation was adopted on October 11, 2016. (Docket Entry 26.) On January 5, 2017, Defendant filed his answer to

5

Plaintiff's complaint. (Docket Entry 30.) The Court entered an order placing this case on a standard discovery track and allowing a discovery completion date of July 24, 2017. (Docket Entry 31.) Plaintiff filed a motion entitled amended plea ("amended complaint") on February 27, 2017. (Docket Entry 32.) Defendant filed his answer to Plaintiff's amended complaint on March 13, 2017. (Docket Entry 33.) On September 6, 2017, Defendant filed his motion for summary judgment. (Docket Entry 37.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from

the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## IV. ANALYSIS

Defendant moves for summary judgment as to Plaintiff's § 1983 claim for an unreasonable seizure of his phone. (*See generally*, Def.'s Br., Docket Entry 39.) Plaintiff has not responded to the motion for summary judgment. Defendant argues that summary judgment should be granted in his favor because: (1) Defendant's seizure of the phone was reasonable because Plaintiff gave implied consent to seize the phone and Defendant found exigent circumstances existed to justify the seizure of Plaintiff's phone; (2) *Heck*, 512 U.S. at 477, mandates dismissal of this action; and (3) Defendant is entitled to qualified immunity. (*Id.*)

The Court first notes that because Plaintiff failed to file a response to Defendant's summary judgment motion within the time required by this Court's Local Rules, "the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. R. 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6–8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). Alternatively, Defendant's motion should be granted on the merits.

### A. Fourth Amendment

Defendant argues that the seizure of Plaintiff's phone was reasonable, therefore not violating his Fourth Amendment rights. (Def.'s Br., Docket Entry 39 at 8-10.) The Fourth

Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Illinois v. McArthur*, 121 S. Ct. 946, 949 (2001). Generally, law enforcement may not seize a suspect's property without a warrant, even where probable cause to do so exists. *United States v. Martin*, 180 F. Supp. 3d 373, 378 (E.D.N.C. 2016). More specifically, "a 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). When determining whether a warrantless seizure is constitutional "the ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *United States v. Yengel*, 711 F.3d 392, 396 (4th Cir. 2013). Nonetheless, the Fourth Amendment is subject to certain exceptions but they "must be narrow and well-delineated in order to retain their constitutional character." *Id.*

I. Implied Consent to Seize Phone

Defendant asserts that the warrantless seizure of Plaintiff's phone was reasonable because Plaintiff provided implied consent. (Docket Entry 39 at 8-9.) One of the exceptions to the Fourth Amendment warrant requirement for seizures and searches is consent. *Trulock v. Freeh*, 275 F.3d 391, 401 (4th Cir. 2001); *see also Schneckloth v. Bustamonte*, 93 S. Ct. 2041 (1973). Specifically, "consent to search or [seize] is only valid if it was knowing and voluntary." *Trulock*, 275 F.3d at 391. Further, the burden rests on the government to prove the voluntariness of the seizure by a preponderance of evidence. *Id.* The Court will view the "totality of the circumstances" to decide whether the consent to the seizure "was knowing and voluntary[.]" *United States v. Mendenhall*, 100 S. Ct. 1870, 1872 (1980). The totality of circumstances are determined by the following factors:

8

> [I]t is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct); the number of officers present; and the duration, location, and time of the encounter.

*United States v. Cameron*, 562 F. Supp. 2d 725, 747 (N.D.W. Va. 2008)

Further, the officer's conclusion of voluntary consent must be objectively reasonable, and "it need not be correct nor even well-intended." *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005). Moreover, "the retention of a citizen's personal property or effects is highly material under the totality of the circumstances analysis" in determining a seizure. *United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002); *see also Royer*, 460 U.S. at 501, 103 S. Ct. 1319. If the officers refrain from hostile or intimidating behavior and the individual possesses the mental capacity to understand the consequence of giving consent, the consent is valid. *United States v. Shanklin*, 2:12CR162, 2013 WL 6019216, at *4 (E.D. Va. Nov. 13, 2013) Last "[c]onsent may be inferred from actions as well as words." *United States v. Alcorn*, 994 F. Supp. 2d 769, 776 (W.D. Va. 2014)

In this case, Defendant's uncontested assertion indicates he and a fellow officer introduced themselves to Plaintiff by stating they were detectives and informed Plaintiff, "he was not under arrest and was free to leave at any time." (Merritt Aff. ¶ 8.) Plaintiff then stated to the officers he was "at Marcus Howard's house until 7:30 pm and maintained that he was dropped off at his Motel at 8:42 pm. (Merritt Aff. ¶ 9; *see also Weaver*, 282 F.3d at 310. Further, Defendant asked for Plaintiff's phone, and he handed his phone to Defendant. (Merritt Aff. ¶ 9.) Nonetheless, Defendant did not return Plaintiff's phone, thus amounting to a seizure. (*Id.*) However, Plaintiff also "did not ask for it back." (*Id.*); In this instance, Plaintiff failed to

request his phone and one can presume that the officer inferred his actions as giving consent to seize his phone. *Alcorn*, 994 F. Supp. 2d at 776. Subsequently, on April 30, 2014, Plaintiff asked to meet with Defendant and Plaintiff had another opportunity to ask about his phone, but again failed to do so. (*Id.* ¶ 12.) Nevertheless, Plaintiff had two occasions to request his phone, and in both instances Plaintiff failed to even mention it. (*Id.* ¶ 8-9; *see also Weaver*, 282 F.3d at 310 (Consensual nature was shown when Plaintiff had multiple opportunities to ask for his seized license, but chose not to.) Therefore, based on the "totality of the circumstances" Plaintiff "knowing[ly] and voluntar[ily]" provided consent for Defendant to seize the phone. *Mendenhall*, 100 S. Ct. at 1872.

## II. Exigent circumstances

Next, Defendant asserts that exigent circumstances existed to justify a warrantless seizure. (Def.'s Br., Docket Entry 39 at 9-10.) It is well settled that an exception to the warrant requirement is the presence of exigent circumstances. *United States v. Harris*, 3:15CR170, 2016 WL 1441382, at *10 (E.D. Va. Apr. 11, 2016), *aff'd*, 688 Fed. Appx. 223 (4th Cir. 2017). The exigent circumstances exception grant officers the ability to bypass the warrant requirement when "the exigencies of the situation make the needs of law enforcement so compelling" that a warrantless seizure becomes reasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). In determining whether exigent circumstances are displayed, the Fourth Circuit considers the following:

> the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the

police are on their trail; and (5) the ready destructibility of the contraband.

*Clark v. Bridges*, 211 F. Supp. 3d 731, 741–42 (D.S.C. 2016) *see also United States v. Turner*, 650 F .2d 526, 528 (4th Cir. 1981) (citing *United States v. Rubin*, 474 F .2d 262, 268 (3d Cir. 1973)). In particular, this exception applies when an officer reasonably believes that there is a chance of the evidence being destroyed before the search warranted is secured and/or his safety is in jeopardy. *United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991). In addition, even if officers create the exigent circumstances, officers may still seize the property if there is a possibility of imminent destruction. *Martin*, 180 F. Supp. 3d at 378. However while "the burden is on the government to demonstrate exigent circumstances existed[,]" the reasonable judgments of the officers on scene are not second guessed by the courts. *Trull v. Smolka*, 411 Fed. Appx. 651, 654 (4th Cir. 2011).

Defendant asserts that the following information existed to support his finding of exigent circumstances:

> Bolder's attempt to fight Bennet at the Easter party; Bolder was heard at the Easter party telling Bennet he would be back; Bolder telling a witness named Weaks he had a gun; Bolder telling Detective Brooks and I that he always had his cell phone with him and the fact that Bolder's cellular phone records would establish the location of the phone at the time of the murder.

(Merritt Aff. ¶ 10.)

In this case, Plaintiff was a suspect at the time he was first interviewed by Defendant, which can be inferred from the officers' travel to Statesville, North Carolina and the interview pertaining to a homicide. (*Id.* ¶ 8.) Further, when considering the eight day period of time between the homicide, on April 21, 2014, and Defendant's interview of Plaintiff on April 29,

11

2014, a reasonable officer could conclude that he was "aware that the police [were] on [his] trail[.]" (*Id.* ¶ 2, 8; *Clark*, 211 F. Supp. 3d at 741–42. Based on Plaintiff's statement that "he always had his cell phone with him," Defendant made "the reasonable judgment" that there was potentially valuable information contained on Plaintiff's phone. *Trull*, 411 Fed. Appx. at 654. Also, Defendant believed that if he had been obligated to provide a warrant before seizing the phone, Plaintiff would have had the opportunity to destroy pertinent evidence. (Merritt Aff. ¶ 10; *see also Grissett*, 925 F.2d at 778 (Exigent circumstances can arise even when police do not have proof that individuals are on the verge of destroying evidence.) Even though information on the phone could have been recovered if the information had been deleted, there was nothing to stop Defendant from destroying the phone device.

Further, after observing Plaintiff's overt nervousness demonstrated by him constantly looking at his phone, Defendant immediately seized Plaintiff's phone, with minimal lapse in time. (Merritt Aff. ¶ 8, 9; *see also United States v. Bradley*, 571 F .2d 787 (4th Cir. 1978) (In contrast, officers conducted an unreasonable seizure and exigent circumstances were not available because the lapse in time of six hours between receiving information of the violation and conducting the search.) Thereafter, the phone was not accessed until a warrant was attained one day after the seizure of the phone, April 30, 2014. (Merritt Aff. ¶ 9, 11.) Thus, exigent circumstances existed for a valid seizure and summary judgment should be granted in favor of Defendant.

### B. *Heck v. Humphrey* Mandates Dismissal

Defendant contends that pursuant to *Heck*, 512 U.S. at 477, Plaintiff's claim for damages fails and summary judgment should be granted in favor of Defendant. (Docket Entry

39 at 10-11.) In *Heck*, the petitioner was convicted of manslaughter and alleged that the police and prosecutor had acted unlawfully. *Heck*, 512 U.S. at 477. *Heck* filed suit pursuant to 42 U.S.C. § 1983 and sought monetary damages. *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003) The *Heck* Court found that in order to award monetary damages to an inmate pursuant to a § 1983 suit that challenges the validity of the conviction or duration of the sentence, the Plaintiff must prove:

> The conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486; *see also Muhammad v. Close*, 124 S. Ct. 1303, 1304 (2004). Further, in *Heck*, the Court found "that civil tort actions are 'not appropriate vehicles for challenging the validity of outstanding criminal judgments'" and are barred no matter the target of the prisoner's suit. *Craddock v. Fisher*, 3:12CV430, 2015 WL 1825720, at *3 (E.D. Va. Apr. 21, 2015), appeal dismissed (Oct. 8, 2015); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). The Courts final inquiry becomes whether the Plaintiff is attempting to invalidate "any outstanding criminal judgment against [him, and if not] the action should be allowed to proceed[.]" *Heck*, 512 U.S. at 486.

Here, Plaintiff has filed this suit under § 1983, requesting general compensatory damages, including pain and suffering and mental anguish, and alleging that the warrantless seizure of his phone was in violation of his Fourth Amendment rights. (*See generally* Am. Compl; Docket Entry 2 at 4.) As discussed above, on April 29, 2014, Defendant interviewed and further seized Plaintiff's phone without a warrant. (Merritt Aff. ¶ 9, 11.)

In particular from the seizure of Plaintiff's phone, GPS coordinates were obtained to confirm that he had made false statements about his whereabouts on the night of the homicide and that he was nearby the location of the homicide. (*Id.* ¶ 17.) Plaintiff's phone also provided a text message receipt from a purchase at a convenience store, located 7 miles away, on the day of the homicide. (*Id.* ¶ 20.) This led officers to retrieve the convenience store surveillance video. (*Id.*) Also, a photograph from the surveillance video was obtained that depicted Plaintiff in similar clothing attire, "a dark colored hooded sweatshirt and a dark colored hat[,]" as witnesses had previously described the man asking for the whereabouts of the victim. (*Id.* ¶ 19, 21.) In addition, the surveillance video showed Plaintiff coming out of a Nissan Altima similar in appearance to the one "nearby the intersection after the murder." (*Id.* ¶ 18, 20.) Moreover, this evidence helped in eventually leading to the conviction of Plaintiff for first degree murder. (*Id.* ¶ 23.) Therefore, Plaintiff's objection to the seizure of the phone, if applied to the criminal case "would necessarily invalidate the criminal conviction[,]" thus summary judgment is recommended to be granted in favor of Defendant. *Tinsley v. Singleton*, CIV.A.8:08CV532SB, 2009 WL 764877, at *5 (D.S.C. Mar. 23, 2009), *on reconsideration*, 8:08-CV-532-SB, 2010 WL 3282973 (D.S.C. Aug. 18, 2010); *see also Heck*, 512 U.S. at 486. "This is not a cognizable role for § 1983." *Ballenger*, 352 F.3d at 847; *See Heck*, 114 S. Ct. 2364 ("We ... deny the existence of [such] a cause of action").

### C. Qualified Immunity

Next, Defendant argues that he is shielded by qualified immunity. (Docket Entry 39 at 12-13.) "The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations for reasonable mistakes as to the legality of their actions."

*Sawyer*, 537 Fed. Appx. at 295 (citations omitted). Further, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: (1) whether the officer violated a constitutional right; and if so, (2) whether the right was "clearly established" at the time of its violation. *See e.g., Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court determines whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992). Here, having found Defendant's conduct to be objectively reasonable under the circumstances, no constitutional right has been violated. *Gregg v. Ham*, 678 F.3d 333, 339 n.7 (4th Cir. 2012) ("To prevail under qualified immunity, [Defendant] has to show either that there was no constitutional violation or that the right violated was not clearly established."). Thus, Defendant is entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 37) be **GRANTED**.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

November 6, 2017
Durham, North Carolina